UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

EVA KATZMAN,

                              Plaintiff,

      v.                                         5:03-CV-1031
                                                               (LEK/GJD)

CITIBANK,

                              Defendant.

---

LAWRENCE E. KAHN
United States District Judge

## **DECISION and ORDER**

        Plaintiff Eva Katzman commenced the instant action seeking the proceeds of a savings certificate issued to her husband by Defendant Citibank. Presently before the Court is Defendant's motion for summary judgment pursuant to Fed. R. Civ. P. 56 seeking dismissal of the Complaint in its entirety.

### **I. FACTS**

        The following facts are taken from Defendants' Statement of Material Facts submitted pursuant to N.D.N.Y.L.R. 7.1(a)(3). Because Plaintiff failed to submit a responsive statement of material facts, the factual assertions in Defendants' Statement of Material Facts, to the extent that it is properly supported with citations to the record, is deemed admitted. N.D.N.Y.L.R. 7.1(a)(3); Gubitosi v. Kapica, 154 F.3d 30, 31 (2d Cir. 1998); Glazer v. Formica Corp., 964 F.2d 149, 154 (2d Cir. 1992); Wallmar-Rodriguez v. Felix Roma Bakery, No. 05cv0111, 2007 WL 1388120, at *2 (N.D.N.Y. May 9, 2007). Even though the facts are essentially uncontested, the Court construes them in the light most

favorable to Plaintiff, and resolves all ambiguities and draws all reasonable factual inferences in Plaintiff's favor.  Michalski v. The Home Depot, Inc., 225 F.3d 113, 115 (2d Cir. 2000).

Plaintiff married Abel Katzman in 1945.  They worked together in a beauty parlor that they owned in Queens, New York.  Abel Katzman conducted all of the business and financial affairs for himself and Plaintiff.  Plaintiff had little to no knowledge of their financial affairs.  Plaintiff testified at deposition that Abel Katzman "was [a] hundred percent [in control of their lives] as far as money was concerned."  Katzman Dep. (Dkt. No. 19, Attach. 5, Ex. I) at 25.

The Katzmans had a business bank account with Citibank at its branch at 176-50 Union Turnpike in Queens, New York, which was in close proximity to their beauty parlor business.  Plaintiff has no recollection of ever personally going to the Union Turnpike branch of Citibank.  The Katzmans sold their business in 1981 and then retired to Florida.  The Katzmans have permanently resided in Florida since 1981.  Abel Katzman died on May 26, 1999.

On or about March 18, 1981, after Abel Katzman deposited $85,000 in Citibank's Union Turnpike branch, Citibank issued a Savings Certificate in the amount of $85,000 to Abel Katzman and/or Eva Katzman.  Plaintiff was not present when the Savings Certificate was issued.  Abel Katzman never informed Plaintiff that he had deposited the $85,000.  Plaintiff became aware of the Savings Certificate for the first time in 2001.

Shortly thereafter, Plaintiff's son made efforts to redeem the Savings Certificate. Citibank searched its records to locate documents and material related to the Savings Certificate.  The only relevant records found by Citibank were various microfiche reports entitled "Time Products 1099 com fiche report."  The com fiche report for the year 1982 listed $10,855.48 in reportable income on the relevant account.  The com fiche reports for 1986 and 1988 did not list the relevant account.

According to Defendant, this demonstrates that the account did not earn any reportable income in those years and, therefore, the account was closed. Defendant was unable to locate com fiche reports for 1981, 1983, 1984, 1985 or 1987. Defendant also conducted a search of its abandoned property unit and did not find any evidence that the relevant account was processed by the abandoned property unit or transferred to the State of New York as abandoned property.

In 2001, Plaintiff presented the Savings Certificate to First Citrus Bank in Florida for payment. Defendant refused to pay on the Savings Certificate. Plaintiff, therefore, commenced the instant action seeking payment on the Savings Certificate.

## II.  STANDARD OF REVIEW

Rule 56 of the *Federal Rules of Civil Procedure* governs motions for summary judgment. It is well settled that on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, see Tenenbaum v. Williams, 193 F.3d 581, 593 (2d Cir. 1999), and may grant summary judgment only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56( c). An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant is able to establish a prima facie basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

475 U.S. 574, 587 (1986). A party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998).

### III. DISCUSSION

#### a. Presumption of Payment

Defendant argues that it is entitled to summary judgment because it has no record of the relevant account being active, Plaintiff has no records concerning the account, and, under the presumption of payment rule, it must be concluded that the account already was paid out. Plaintiff responds that the presumption of payment rule is inapplicable here and there is insufficient evidence that the account was paid out.

New York recognizes a presumption of payment rule. Under this rule, after the lapse of a long period of time between the right to enforce an obligation and an attempt to do so, a presumption arises that the obligation as been discharged. See Bean v. Tonnele, 94 N.Y. 381, 1884 WL 12232 (1884); see also In re Wood's Will, 7 Misc.2d 410 (Surrogate's Court Queens County 1957); Boscowitz v. Chase National Bank of City of New York, 202 Misc. 1016, 111 N.Y.S.2d 147 (N.Y. Mun. Ct. 1952); Central Trust Co. of New York v. Third Ave. R. Co., 186 F. 291 (2d Cir. 1911) (noting the "common-law presumption of payment after the lapse of 20 years"). "The presumption of payment from a great lapse of time is founded upon the rational ground that a person naturally desires to possess and enjoy his own, and that an unexplained neglect to enforce an alleged right, for a long period, casts suspicion upon the existence of the right itself. This presumption may be fortified or rebutted by circumstances." Bean, 94 N.Y. at 386; see Dag E. Ytreberg, PRESUMPTION OF PAYMENT

AS APPLICABLE TO BANK DEPOSIT, 69 A.L.R.3d 1311 (1976) ("All the cases that have considered the question have held that the presumption of payment from lapse of time applies to a bank deposit.").

New York law is unclear as to whether a lapse of twenty years is required for the legal presumption to apply, or whether a lesser time is sufficient. Some cases have suggested that "[w]hen forbearance has continued twenty years, this alone is sufficient, of itself, to warrant the presumption of payment; and when connected with circumstances tending to prove payment, a shorter period will be sufficient." Bander v. Snyder, 5 Barb. 63 (N.Y. Sup. 1848). See also In re Rutherfurd's Estate, 182 Misc. 1019 (Surrogates Court 1944) (applying the presumption to a lapse of less than nineteen years.) There have been similar results in other New York cases; Clark's Ex'rs v. Hopkins, 7 Johns. 556 (N.Y. Sup. Ct. 1811) ("[A]fter 18 and 20 years, a bond will be presumed to have been paid."); Jackson ex dem. Martin v. Pratt, 10 Johns. 381 (1813) (Where no possession had been taken under a mortgage, nor any interest paid, nor steps taken to enforce it for 19 years, "the jury would have been well warranted to have presumed it satisfied."); Long v. Straus, 124 Ind. 84 (presumption applies even thought it was days short of twenty years). Other New York cases, however, have require a lapse of twenty years before applying the presumption. See Lowe v. Leary, 184 A.D. 421, 427, 171 N.Y.S. 637 (1 Dept. 1918); Clark v. Bogardus, 2 Edw.Ch. 387 (N.Y. Ch. 1834).

Under this authority, requiring the full period before applying the presumption, a lapse of time less than twenty years can give rise to an inference of payment. See Oneida Nat. Bank & Trust Co. of Central New York v. Kranz, 70 Misc.2d 595, 598 (Sup. Ct. 1972); Sheldon v. Heaton, 22 A.D. 308, 47 N.Y.S.1124, 1126 (3d Dep't 1897) ("'[A] jury may infer payment from circumstances although 20 years have not elapsed."); McMurray v. McMurray, 63 Hun. 183, 17 N.Y.S. 657 (1892); Boyd v. Boyd, 9 Misc. 161, 29 N.Y.S. 7 (1894) ("[T]he lapse of less than 20 years [does not] create[] a

presumption of payment. But lapse of time . . . and other circumstances, may authorize the jury to find the fact of payment.") (internal citation omitted), rev'd on other grounds, 11 Misc. 357, 32 N.Y.S. 295 (1895). The longer the lapse, the greater the inference. See PRESUMPTION OF PAYMENT FROM LAPSE OF TIME, 1 A.L.R. 779 ("The strength of the evidence necessary to enable the jury to infer payment from lapse of less than twenty years, in connection with other circumstances, diminishes as the period after the maturity of the debt approaches twenty years; in other words, the evidence required to establish the fact of payment, in combination with lapse of time less than twenty years, must be more or less strong, as the time is more or less short of twenty years"). To the extent any rule can be formulated, it is that each case must be resolved on a case-by-case basis based on the totality of the circumstances.

      This case does not meet the 20 year threshold. "[T]wenty years creates a presumption of payment, *if no interest has been paid in the mean time*." Goldhawk v. Duane, 10 F. Cas. 549 (D. Pa. 1808) (emphasis added); see also Lowe v. Leary, 184 A.D. 421, 427, 171, N.Y.S. 637 (1st Dep't 1918) ("As there is no presumption of payment, 20 years from the date of the payment of the last interest not having elapsed, there is no presumption that the debt is satisfied."); aff'd, 227 N.Y. 629 (1919); Wohanka v. Nelson, 127 Misc. 636, 217 N.Y.S. 207, 209 (Sup. Ct. 1926) (A lapse of a long period of time "raised a conclusive presumption of payment, in the absence of proof of payment of either principal or interest within that time."); Zarkowski v. Schroeder, 60 A.D. 457, 69 N.Y.S. 893, 894 (2d Dep't 1901); Murdock v. Waterman, 100 Sickels 55, 39 N.E. 829 (NY 1895) (noting that the presumption of payment "might be repelled by proof of payment of some part."); Central Bank of Troy v. Heydorn, 3 Sickels 260, 1872 WL 9803 (NY 1872) (A presumption of payment arises "if . . . there had been no interest paid . . . for twenty years."); Peck v. Mallams, 6 Seld. 509, 1853 WL 6093 (N.Y.

1853) ("The presumption of payment of a mortgage only arises at the expiration of twenty years from the last payment of principal or interest."). Here, the Savings Certificate was issued on March 18, 1981. Because it was a twenty-six week deposit, it became due on September 16, 1981. Defendant's records indicate that interest was paid through 1982. According to Plaintiff's deposition testimony and her affidavit, she first discovered the Savings Certificate in January 2001.[1] Attached to Defendant's motion for summary judgment is a letter from Plaintiff's son dated October 24, 2001. In that letter, Plaintiff's son states that his mother had been attempting to obtain payment "for the past 2 years." Def.' Ex. B.[2] The letter further states that he personally "went into a Citibank branch on Park Ave and presented the Certificate of Deposit." Id. The letter does not indicate when Plaintiff's son presented the Certificate for payment. It is clear from this letter that Plaintiff's son presented the Certificate in October 2001 at the latest for payment. Because October 2001 is less than twenty years from the date interest was last paid, the legal presumption does not necessary attach. Even assuming Plaintiff's son's efforts at presenting the Certificate were legally insufficient, the evidence before the Court suggests that Plaintiff presented the Certificate in November 2001 to First Citrus Bank, which then attempted to collect from Citibank on Plaintiff's behalf by presenting a letter to Defendant with Plaintiff's signature

---

[1] Plaintiff's deposition testimony stated that she first saw the Certificate in 2001, but did not give a specific month or date. Pl.'s Dep. at 28. In her affidavit in opposition to Defendant's motion, Plaintiff stated that she discovered the Certificate in January 2001. Pl.'s Aff. at ¶ 6.

[2] The statement that Plaintiff had been seeking payment on the Certificate is inherently unreliable because it (1) directly contradicts Plaintiff's deposition testimony that she first discovered the Certificate in January 2001; (2) directly contradict Defendant's statement of material facts (which, as discussed, are deemed true); and (3) the author admitted at deposition that "there was an error in the letter, the time. . . . . The reality of it was it had been since that February or January [of 2001]." Jerry Katzman dep. at . 18-19. Given the lack of authentication of the letter or corroboration by an affidavit from Plaintiff's son, and the plain inconsistencies between the letter and the record evidence, this letter alone is insufficient to create a triable issue of fact regarding the presentment date, see Scott v. Harris, 127 S. Ct. 1769, 1775-76 (2007); Zellner v. Summerlin, — F.3d —, —, 2007 WL 2067932, at *23 ("Incontrovertible evidence relied on by the moving party . . . should be credited by the court on . . . a motion if it so utterly discredit's the opposing party's version that no reasonable juror could fail to believe the version advanced by the moving party."). Nevertheless, for reasons to be discussed, the reliability or credibility of statements in this letter are irrelevant to the instant motion for summary judgment.

on it.³  Again, November 2001 is less than twenty years from 1982 (when interest was last paid) and, therefore, the legal presumption does not necessarily attach.  Accordingly, the Court declines to apply the legal presumption in this case.

### b.    Whether Defendant is Otherwise Entitled to Summary Judgment

The remaining question is whether Defendant is otherwise entitled to summary judgment. Although the Court declines to conclude that the legal presumption applies here (which would require Plaintiff to come forward with evidence rebutting the presumption), the Court cannot disregard the long lapse in time and the other compelling evidence in the record.  As the above-cited cases note, the long lapse of time of nearly nineteen years warrants a strong inference of payment.⁴  See Oneida Nat. Bank & Trust Co. of Central New York v. Kranz, 70 Misc.2d 595, 598, 334 N.Y.S.2d 336 (Sup. Ct. 1972) ("[L]apse of time after an unbarred debt is due, while not raising a presumption of payment which may be legally conclusive, may be sufficient to give rise to an inference of payment which, when considered with other circumstances, may be factually conclusive"). "An inference of payment is proper before the limitations period has run but when a lapse of time, coupled with certain acts and/or

---

³ Defendant argues that Plaintiff did not "present" the Certificate for payment until she commenced the instant litigation because that is the first time she ever proffered the *original* Certificate.  This argument is belied by Defendant's own affidavit that states that "[i]f a Citibank customer who is identified by an officer or employee of a branch came to the branch without the Savings Certificate, the Savings Certificate would have been paid to the customer and the appropriate notation made on the account."  Williams Aff. at ¶ 10.  Accordingly, there is evidence in the record from which a fair-minded trier of fact could reasonably conclude that presentation of the original Certificate was not, in fact, necessary.  Arguably, Plaintiff's son's efforts to obtain payment on the Certificate did not constitute "presentment" because he never informed Defendant whether he had proper authorization to act on behalf of Plaintiff.  Jerry Katzman Dep. at 22.

⁴ In their memorandum of law, Plaintiff concedes that the long lapse of time creates an inference of payment. Pl.'s Mem. of Law (Dkt. No. 25) at 7 (In violation of the Court's local rules, Plaintiff failed to put page numbers on her memorandum of law.  N.D.N.Y.L.R. 10.1(a).  The Court's reference to page 7 is calculated by counting the cover page as page one and counting consecutively from that point.).

omissions warrants such an inference." Signor v. J. P. Morgan Chase & Co., 13 Misc.3d 1229(A), 831 N.Y.S. 2d 356 at *2, fn. 3 (Sup. Ct. Broome Cty. 2006) (finding that an inference of payment was warranted when the defendant Bank had no records on the account, the bank had a policy of destroying records seven years after the account was closed and the Plaintiff had no evidence that the accounts were active). On top of this inference, the other undisputed evidence warrants summary judgment in favor of Defendant. This undisputed evidence includes the following.

First, it is Defendant's policy to destroy account records seven years after the account has been closed. Defendant has no records showing an open account after 1982. These facts support an inference that the account was paid out. Second, Defendant does not have any records showing interest payments on the account after 1982. This also creates, and supports, an inference that the account was closed, paid out, or otherwise had a zero balance. Third, the last year Plaintiff filed tax returns was in 1982. This indicates that Plaintiff and her husband did not have any reportable income, including 1099 income from any Citibank accounts, in the years after 1982. Accordingly, for seventeen (17) years prior to his death, Plaintiff's husband, who had knowledge of the Savings certificate at issue, did not report interest on such an account as income and presumably had no such income to report.

Fourth, it is Defendant's policy that if an account is inactive for three years (no deposits, withdrawals or other customer activity), the account is placed on an inactive status and notice is sent to the customer. If there is no response to the letter or activity on the account within two years, the account is transferred to the Abandoned Property Unit and scheduled to be transferred to the State of New York. The Abandoned Property Unit reviews Defendant's records to identify any related accounts with activity that would avoid the account from being deemed abandoned. Thereafter, another notice is sent to the customer, followed by a certified letter. If no response is received, Defendant advertises

that the account is to be transferred to the State of New York.  If there is no response, the account is so transferred.  Here, neither Defendant nor the State of New York have any records showing that the account was treated as abandoned property.  This further suggests that the account was closed.

Fifth, Plaintiff has no knowledge concerning the opening of the account, any withdrawals from the account, or whether her husband closed the account.  Sixth, mere possession of the original Certificate of Deposit does not demonstrate that the account is still active or that the funds are still in the account.  Defendant has submitted undisputed evidence that the original Certificate did not need to be presented to obtain funds from the account.  Rather, Defendant would pay out on an account if the customer was properly identified by a bank officer or employee.

Although none of the foregoing facts is direct evidence that the account was paid, it is compelling, undisputed circumstantial evidence that the account was, in fact, paid out.  The only evidence Plaintiff proffers in opposition to summary judgment is that she possesses the original Savings Certificate.  As discussed, however, possession of the Savings Certificate does not necessarily indicate that the account was not paid out.[5]  In light of the inference of payment and all the other undisputed evidence discussed above, possession of the Savings Certificate alone is insufficient evidence upon which a fair-minded trier of fact could reasonably conclude that the account had not been paid out.

---

[5] For this reason, Plaintiff's argument that there can be no inference or presumption of payment because the Savings Certificate never became due because the original was never presented to Defendant is unsupported by the facts in the record.  The undisputed facts are that it was Defendant's policy to pay out on Savings Certificates if the customer was properly identified by a bank officer or employee.  Although, in her memorandum of law, Plaintiff challenges the affidavit of Zina Williams that sets forth this policy, Plaintiff does not offer any evidence tending to suggest that this was not Defendant's policy.  Plaintiff also apparently did not depose Ms. Williams or otherwise engage in discovery aimed at discerning any such policies.

Additionally, it should be noted that Plaintiff's argument that public policy favors the abolishment of a presumption or inference of payment cannot succeed. The rule creating a presumption of payment stems from disfavor of stale and dormant claims. PRESUMPTION OF PAYMENT FROM LAPSE OF TIME, 1 A.L.R. 779. "This rule was also intended for the protection of the debtor, whose receipts or vouchers may perhaps be lost, or witnesses be dead or removed" and has been applied to protect mortgagors, whose debt is assumed to have been paid when the creditor banks have not taken action to collect in twenty years. Id. (quoting DeFord v. Green, 1 Marv. (Del.) 316 (1894)). Although Plaintiff makes a logical argument that, in the age of computers, companies like Defendant should have greater record retention requirements than in the past, the presumption of payment rule is still relevant, protecting debtors of all types and situations when records cannot be found.

## IV.  CONCLUSION

Based on the foregoing discussion, it is hereby

>**ORDERED**, that Defendant's motion for summary judgment (Dkt. No. 19) is **GRANTED**;

and it is further

>**ORDERED**, that Plaintiff's Complaint is **DISMISSED**, and it is further

>**ORDERED**, that the Clerk serve a copy of this Order on the parties.

>**IT IS SO ORDERED**.

DATED: August 09, 2007
        Albany, New York

Lawrence E. Kahn
U.S. District Judge